STRATA ENERGY, INC. and Northstar Resources, Inc., Appellants,

v.

John David GAVENDA, et al., Appellees.

No. A14–87–568–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 23, 1988.

Rehearing Denied Aug. 4, 1988.

Dissenting Opinion on Rehearing Aug. 25, 1988.

Maurice L. Bresenhan, Jr., Houston, for appellants.

Sam B. Cobb, Jr., Michael A. Hatchell, Tyler, for appellees.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

OPINION

ROBERTSON, Justice.

This controversy involves the recovery of money for deficiencies in royalty payments. This is the second appeal of this case. The previous opinion of this court is at 683 S.W.2d 859; the opinion of the supreme court is at 705 S.W.2d 690. The supreme court reversed in part the judgment of this court and remanded the cause to the trial court to determine the amount of royalties owed to the Gavendas that were retained by Strata and Northstar, prejudgment interest due thereon and attorney's fees. Although the supreme court noted that the total amount of the royalty deficiency was undisputed, it could not determine from the record what portion of the royalty deficiency was retained by Strata and Northstar. In view of the court's mandate, the issue before the trial court was a narrow one. This appeal follows entry of judgment for appellees, plaintiffs in the trial court. We reverse in part but otherwise affirm.

The facts are reflected in the prior opinions referenced above and there is no need to restate them here. It is important, however, to note the following from the supreme court opinion: (1) neither Strata nor Northstar disputed that the deed reserved "a ½ royalty, or ½ of gross production" or that the amount of the royalty underpayment to the Gavendas was $2,435,457.51 plus interest, 705 S.W.2d at 691; and (2) Strata and Northstar are "liable to the Gavendas for whatever portion of their royalties it retained, although it is not liable to the Gavendas for any of their royalties it paid out to various overriding and other royalty owners." 705 S.W.2d at 693. The mandate provided, in part, that "to the extent Strata and Northstar retained (did not pay out to other royalty owners) royalties owed to the Gavendas, the division and transfer orders were not binding until revoked." The issue before the trial court should have been resolved without difficulty, but the docket sheet reveals a great amount of activity between the receipt of the supreme court mandate in April 1986 and the trial of the case in January 1987.

However, after the jury was seated, the parties stipulated to the pertinent and controlling facts as follows:

2. Strata's detailed audit established that ½ of the gross production proceeds, less severance taxes and Windfall Profit Taxes, is $2,686,053.97.

3. Strata and/or Scurlock Oil Company, the crude oil purchaser ("Scurlock"), paid the Gavendas, as royalty, $250,342.44; Strata tendered into the registry of the Court $27,469.59 in mid–1983 and Scurlock tendered into the registry of the Court $57,944.72 during July or August, 1986 for total royalty payments of $335,-756.75 to the Gavendas listed in the Division Orders.

4. Strata and/or Scurlock paid as royalty $335,756.75 to Billy Blaha (the Mineral Owner and Lessor), and his heirs and devisees, as listed in the division orders.

5. Strata and/or Scurlock paid as overriding royalty $520,422.96 to the various overriding royalty interest owners listed in the division orders, or their heirs and assigns.

6. Strata and/or Scurlock paid $799,-684.65 to the working interest owners who are assigns of Strata.

7. After taking into consideration all of the above payments, Strata kept $3,172,-901.25.

8. The first payment of production proceeds was received by Strata on or about July 20, 1979 and subsequent payments were received on a monthly basis as oil and gas was produced and sold.

Additionally, the parties stipulated that if the award of unpaid royalties were equal to or greater than $2,014,540, the defendants (appellants) would pay to the Gavendas attorney's fees in the sum of $750,000. Judgment was then entered for plaintiffs for $2,014,540.47 in royalty deficiency, $2,437,114.03 in interest and $750,000 in attorney's fees.

While appellants assign some fourteen points of error, because of the limited issues under the supreme court mandate and the stipulated facts, only two issues merit discussion: (1) whether appellants are entitled to any "offsets and credits for that portion of the Gavendas' royalties dis-

bursed to others" (other than the $335,-756.75 royalty paid to Billy Blaha, the mineral owner and lessor) and (2) whether appellees are entitled to "prejudgment interest at the *Cavnar* rate rather than as prescribed by TEX.REV.CIV.STAT.ANN. art. 5069-1.03" on the total amount of the judgment from July 20, 1979 (the stipulated date of the first payment of production proceeds).

In their first set of points appellants argue they are entitled to a credit on the amount of the royalty deficiency owed to the Gavendas not only of the portion of the Gavendas' royalty paid to Blaha ($335,-756.75) but also for the amount of the royalty paid to the various overriding royalty interest owners ($520,422.96) and to the working interest owners ($799,684.65). We do not agree. In this case the supreme court held that the division and transfer orders were not binding on the Gavendas because, contrary to the usual case, there had been no detrimental reliance by appellants upon the orders. Instead, *appellants had profited at the royalty owner's expense.* 705 S.W.2d at 692. It seems clear, therefore, that the only credits appellants are entitled to are for those royalties *belonging to the Gavendas* that were paid to others and for which appellants *did not profit* at the Gavendas' expense.

■ Both case law and the evidence (specifically the testimony of Strata's representative, Mr. Suhor) support the conclusion that the overriding royalty interests were created out of the working interest. *See T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Therefore, the royalty payments made to the seven overriding royalty interest owners were not to be paid out of royalties belonging to the Gavendas but were to be paid out of the working interest. Consequently, appellants are not entitled to a credit for these sums. Regarding appellants' contention that they are entitled to a credit for the "royalties" paid to the working interest owners, we note that the latter were "assigns of Strata" (as stipulated by appellants) and were not even listed in the division or transfer orders upon which appel-

lants argue they relied. Appellants' points one through nine are overruled.

■ In their tenth point of error appellants contend the court erred in "awarding pre-judgment interest at the *Cavnar* rate rather than as prescribed by TEX.REV.CIV. STAT.ANN. art. 5069-1.03." We agree. All parties stipulated that the first payment for production was received by Strata on July 20, 1979, and subsequent payments were received on a monthly basis. The judgment awarded interest in the sum of $2,437,114.03, calculated at the rate of ten percent on the total royalty deficiency of $2,014,540.47 compounded daily from July 20, 1979. TEX.REV.CIV.STAT.ANN. art. 5069-1.03 (Vernon 1987), provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978), the supreme court recognized two separate bases for the award of prejudgment interest: (1) an enabling statute and (2) general principles of equity. Based on the latter, the supreme court in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985) held that a prevailing plaintiff in a personal injury case was entitled to prejudgment interest at the rate that exists on the date judgment is rendered. To solve the problem of when interest is to begin to accrue, as damages are typically incurred intermittently throughout the prejudgment period, the court adopted a specific date.

The troublesome issue since *Cavnar* is whether statutory interest or equitable interest should be awarded. Since *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929 (Tex. 1988), it is clear that even in a breach of contract action for unascertainable damages, the *Cavnar* rate applies. The parties to this action are in serious disagreement over whether this cause of action is based upon contract—appellants contending it is and appellees contending it is not. We do not believe we need answer that question,

however, because the supreme court has already held in the prior appeal that the Gavendas are entitled to their requested attorney's fees under TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon Supp.1985), now codified as TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). The court stated:

> Attorney's fees are recoverable in suits for royalty payments owed under oil and gas leases. *Atlantic Richfield Co. v. Manges*, 702 F.2d 85, 87 (5th Cir.1983); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 645 (Tex.App.—Corpus Christi 1984, no writ). Because we see no distinction between allowing attorney's fees on underpaid royalty suits based on leases and those based on deed reservations, we hold the Gavendas can recover their attorney's fees.

705 S.W.2d at 693. In view of this language and the undisputed fact that the damages are readily ascertainable by a simple mathematical calculation of each monthly deficiency in the royalty payment, we hold that prejudgment interest is to be awarded and calculated under art. 5069-1.-03. Appellants' tenth point is sustained.

We have reviewed appellants' other points of error and they are without merit. Likewise, appellees' point that we should assess damages for a frivolous appeal is without merit.

 Where an error has occurred in a part of the judgment and the matter is ripe for rendition of judgment, we would normally do so. However, since the total amount of prejudgment interest owed involves detailed mathematical calculations based upon the monthly royalty deficiencies, we reverse that portion of the judgment awarding prejudgment interest and remand to the trial court with instructions to award prejudgment interest to appellees in accordance with TEX.REV.CIV.STAT.ANN. art. 5069-1.03 and this opinion. In all other respects, the judgment is affirmed.

### DISSENTING OPINION ON MOTION FOR REHEARING

MURPHY, Justice.

In response to appellee's motion for rehearing, I dissent from the majority opinion for its failure to follow this court's decision in *Allen v. Allen*, 751 S.W.2d 567 (Tex. App.—Houston [14th Dist.], 1988, writ filed). In *Allen* this court cited from our earlier decision in *City of Houston v. Wolf*, 712 S.W.2d 228 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd) wherein we reaffirmed the rule found in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), by stating "as a matter of law, in all types of cases, awards of prejudgment interest shall be compounded on a daily basis." *Id.* at 229. I believe that the inconsistent effect of the majority's opinion in employing art. 5069-1.03 to calculate prejudgment interest and yet failing to compound it daily per this court's holding in *Allen* and *Wolf* is improvident.